# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

DONALD LUBIN,

      Plaintiff,

v.                                                   CV 14-972 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Donald Lubin applied for disability insurance benefits and supplemental security income on January 25, 2011, based on a learning disability, Asperger's disorder, and asthma. (Administrative Record "AR" 190-202.) After his application was denied at all administrative levels, Lubin filed his Motion to Reverse and Remand for a Rehearing. (Doc. 16.) The Commissioner of the Social Security Administration ("SSA") filed a response (Doc. 19) and Lubin filed a reply (Doc. 22). For the reasons explained below, I deny Lubin's motion to remand and affirm the judgment of the SSA.

### STANDARD OF REVIEW

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that she has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

## SEQUENTIAL EVALUATION PROCESS

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2015). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4),  & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of his past

relevant work to see if the claimant is still capable of performing his past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing his past work, then he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to his past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### FACTUAL BACKGROUND

Lubin is a fifty-seven-year-old man with an A.S. in Science and Arts. (AR 61, 237.) Lubin previously worked as an engineering technician at Phillips Research Laboratory and at the Air Force Research Laboratory, as a laser laboratory technician at Boeing LTS, and as a quality assurance specialist somewhere in Indiana. (AR 237.) Lubin claims disability beginning on August 1, 2010. (AR 190.)

I do not address everything in the record, but rather target my factual discussion to the facts necessary to the disposition of this case.

The New Mexico Division of Vocational Rehabilitation referred Lubin to Mark Arcuri, Ph.D., for an evaluation. Dr. Arcuri met with Lubin on October 15, 2010. (AR 316.) Dr. Arcuri considered Lubin a good candidate for success with vocational rehabilitation, but found that Lubin had a non-specific learning disorder affecting verbal and nonverbal processing, a reading disorder, a disorder of written expression, a non-specific learning disorder involving

mathematics, and Asperger's disorder. (AR 322-26.) Dr. Arcuri recommended work or training accommodations, help with job placement, and vocational counseling. (AR 327.)

Lubin's friend Phillip Peterson, Ph.D., submitted a third party function report on Lubin's behalf on January 27, 2011. (AR 253.) Dr. Peterson has known Lubin since approximately 2001 and said that Lubin has suffered from attention deficit hyperactivity disorder since that time. (AR 254.) Lubin experiences interpersonal difficulties: he has a hard time getting along with his family, has problems with supervisors and coworkers, and is generally hard to handle. (AR 258.) Dr. Peterson indicated that Lubin has a learning disability and his condition has not changed over time. (AR 257.) Lubin has a hard time learning new things and is limited in the things he can learn; he has a hard time remembering and needs instructions to be crystal clear. (AR 258.) Lubin does not handle stress well and needs a routine. (AR 259.)

State agency consultative examiner Eligio Padilla, Ph.D., met Lubin for a mental status examination on July 7, 2011. (AR 378.) Dr. Padilla reviewed records from Dr. Arcuri, function reports submitted by Lubin to the state agency, and other records. (*Id.*) Dr. Padilla noted that Lubin adequately handled all activities of daily living, but engaged in limited eye contact, had mildly impaired judgment, and apparently compromised insight and decision-making abilities. (AR 380-81.) There were significant discrepancies between Lubin's verbal and nonverbal abilities. (AR 381.) Dr. Padilla provisionally diagnosed Lubin with Asperger's disorder and gave full diagnoses for a non-specific learning disorder, reading disorder, disorder of written expression, and a non-specific cannabis-related disorder. However, Dr. Padilla gave Lubin a guarded-to-fair prognosis. (AR 382.) In his Psychological Source Statement of Ability to Do Work-Related Activities, Dr. Padilla indicated that Lubin has mild limitations with regard to understanding and remembering very short and simple instructions, carrying out instructions,

4

attending and concentrating, working without supervision, and being aware of normal hazards and reacting appropriately. (AR 382.) Dr. Padilla also indicated that Lubin has moderate limitations understanding and remembering detailed or complex instructions; interacting with the public, coworkers, and supervisors; and adapting to changes in the workplace. (*Id.*)

Donald Gucker, Ph.D., reviewed Lubin's records for the state agency on August 19, 2011. (AR 386.) He found that Lubin suffers from a learning disorder, non-specific cannabis-related disorder, and Asperger's disorder; experiences mild limitations in activities of daily living; experiences moderate difficulties maintaining social functioning and maintaining concentration, persistence, or pace. (AR 387-96.) Dr. Gucker also conducted a mental RFC assessment based on Lubin's records, and concluded that Lubin "can understand, remember, and carry out complex instructions, use judgment to make decisions, attend and concentrate for two hours at a time, interact with co-workers and supervisors . . . with some discomfort, and can respond appropriately to changes in a work setting." (AR 402.) Dr. Gucker found that Lubin was moderately limited in his ability to: carry out detailed instructions and work in coordination with or proximity to others without being distracted by them; complete a normal workday or workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. (AR 400-01.)

Sylvia Green, Lubin's mother, submitted a third party function report on November 10, 2011. (AR 273.) Green provided very little information, but wrote that Lubin is hypercritical,

5

impatient, frustrating, and has trouble getting along with others. (AR 278.) Lubin also has problems with memory, concentration, and understanding, which Green directly attributed to Lubin's learning disability. (*Id.*)

Jun Barrack, Lubin's friend, submitted a third party statement on January 22, 2013, reiterating some of the concerns of Green and Peterson, and stating that Lubin is overall not capable of working with people. (AR 315.)

The ALJ held a hearing on January 29, 2013, at which Lubin and a vocational expert testified. (AR 32-60.) Lubin testified that he plays chess or reads on a regular basis. (AR 42.)

## THE ALJ AND APPEALS COUNCIL'S DECISIONS

The ALJ issued her decision on February 22, 2013. (AR 26.) The ALJ initially determined that Lubin met insured status requirements through December 31, 2014. (AR 19.) At step one, the ALJ determined that Lubin has not engaged in substantial gainful activity since his alleged onset date of August 1, 2010. (*Id.*) At step two, the ALJ found that Lubin has the severe impairments of asthma, Asperger's disorder, a learning disability, and a cannabis-related disorder. (*Id.*) The ALJ concluded that Lubin does not have an impairment or combination of impairments that meet or medically equal anything on the Listing of Impairments. (*Id.*) The ALJ specifically considered Listings 12.02 and 12.09, and noted that Lubin experiences mild restrictions in activities of daily living, moderate difficulties with social functioning, and mild difficulties with regard to concentration, persistence or pace. (AR 19-20.)

At phase one of step four, the ALJ determined that Lubin has the RFC for work at all exertional levels, but must avoid moderate exposure to extreme cold, wetness, or humidity; exposure to environmental irritants like fumes, dusts, and gases; should have only occasional interaction with the public; and is limited to occupations which do not require complex written or

verbal communication. (AR 20.) The ALJ summarized Lubin's hearing testimony, notes from Drs. Arcuri and Padilla, state agency medical reports, additional medical records, and the third party statements from Lubin's friends and family. (AR 21-23.) The ALJ stated that she gave "great weight to State agency . . . medical consultants," including Dr. Padilla. (AR 23.) She found that Dr. Padilla's moderate limitation on Lubin's ability to understand and remember detailed or complex instructions was not supported by the record as a whole because Lubin admitted to playing chess several times per week, reading for fun, attending school, and looking for work on a computer, and these activities are inconsistent with such a limitation. (*Id.*) She noted that the third party function report from Dr. Peterson essentially restated Lubin's own complaints and that Green's report contained very limited information on Lubin's functional capabilities. (*Id.*) The ALJ considered the three third party reports and found that, while all three reports reflected certain limitations, they also showed that Lubin has an active life and high functioning capabilities. (*Id.*)

At phases two and three of step four, the ALJ determined that Lubin was unable to return to his past relevant work as a quality assurance specialist or lab manager. (AR 24-25.) Relying on the testimony of the vocational expert, the ALJ concluded at step five that Lubin could perform other work. (AR 25-26.) The ALJ found that Lubin was not disabled. (AR 26.)

### DISCUSSION

Lubin argues that the ALJ erred at step four by failing to properly weigh medical opinion evidence from Drs. Padilla, and Gucker; failing to properly consider third party opinion evidence from Dr. Peterson, Green, and Barrack; and failing to adequately describe how Asperger's disorder and a learning disability affected Lubin's ability to conduct sustained work activities.

## I.      Medical Opinions

Social Security Ruling ("SSR") 96-6p, states that "[ALJs] and the Appeals Council may not ignore the[] opinions [of state agency physicians] and must explain the weight given to these opinions in their decisions." 1996 WL 374180, at *1 (July 2, 1996).[1] Nonexamining physicians' opinions are entitled to less weight than those of examining physicians. The factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c) apply in determining the weight to be accorded to nonexamining physicians. These factors include: 1) the nature and extent of the treatment relationship, 2) the degree to which the opinion is supported by other evidence of record, 3) consistency between the opinion and the record as a whole, 4) whether the physician is a specialist in the area upon which an opinion is rendered, and 5) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

### A.  Dr. Padilla

Lubin contends that the ALJ erred at step four by failing to incorporate all of his mental limitations into the RFC as a result of failing to appropriately weigh the medical opinions. Lubin argues first that the ALJ failed to account for marked deficiencies identified by Dr. Padilla. However, Lubin misquotes Dr. Padilla's opinion. In fact, the section of quoted text regarding marked deficiencies comes from Dr. Padilla quoting Dr. Arcuri. (*Compare* AR 380 *with* Doc. 16 at 13.)

Next, Lubin claims that the ALJ failed to account for or explain why she did not account for certain moderate limitations listed in Dr. Padilla's opinion. Specifically, Lubin contends that

---

[1] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

the ALJ impermissibly cherry-picked from Dr. Padilla's opinion by acknowledging the mild limitations noted by Dr. Padilla but failing to account for his findings of moderate limitations.

Contrary to Lubin's assertion, the ALJ adequately explained, with reference to specific evidence in the record, why she did not adopt Dr. Padilla's moderate limitation on Lubin's ability to understand and remember detailed or complex instructions. The ALJ referenced Lubin's testimony that he plays chess on a regular basis, reads for fun, attends schools, and looks for work on the computer, as well as reviewing expert Dr. Gucker's conclusion that Lubin can understand, remember, and carry out complex instructions. (AR 23.) Despite her finding that Dr. Padilla's moderate limitation was not supported by the evidence of record, the ALJ nonetheless limited Lubin's RFC to "occupations which do not require complex written or verbal communication." (AR 20.) The ALJ accounted for this limitation and Lubin's argument on this point is without merit.

Lubin does not specifically argue that the ALJ erred in her treatment of Dr. Padilla's moderate limitation on Lubin's ability to interact with the public, coworkers, or supervisors. If he had, I would note that the ALJ sufficiently accounted for her treatment of this limitation. Specifically, the ALJ noted that Lubin plays chess several times a week and that Dr. Gucker determined that Lubin could interact with coworkers and supervisors "with some discomfort." (AR 23.) An ALJ may "dismiss or discount" an examining sources opinion based on an evaluation of the relevant factors. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012). While a reasonable mind could differ with the ALJ's evaluation of the evidence before her, I find that the ALJ appropriately applied the factors of 20 C.F.R. §§ 404.1527(c) and 416.927(c), and I cannot say that she committed legal error or that her decision on this point was not supported by substantial evidence.

### B.  Dr. Gucker[2]

Lubin argues that the ALJ failed to incorporate Dr. Gucker's findings of moderate limitations with regard to Lubin's ability to: complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, and set realistic goals or make plans independently of others. Additionally, Lubin claims that the ALJ failed to address Dr. Gucker's conclusion that Lubin could interact with coworkers and supervisors with some discomfort. Lubin accuses the ALJ of impermissible cherry-picking from Dr. Gucker's opinion, in violation of *Frantz v. Astrue*, 509 F.3d 1299 (10th Cir. 2007). In *Frantz*, the Court held that the ALJ erred by accepting some of the moderate limitations advanced by a nonexamining physician, but rejecting others without explanation. *Id.* at 1302-03.

"The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Here, the ALJ did not specifically discuss the internal inconsistency found in Dr. Gucker's opinion: on the one hand, Dr. Gucker found moderate limitations in Lubin's ability to complete work without interruption from psychologically based symptoms, perform at a consistent pace, and set realistic goals; on the other, Dr. Gucker explicitly stated that "based on mental issues only, [Lubin] can understand, remember, and carry out complex instructions, use judgment to make decisions, attend and concentrate for two hours at a time, . . . and can respond appropriately to changes in a work setting." (AR 402.) While this oversight by the ALJ is perhaps vexing, it does not constitute reversible error. Elsewhere in her opinion, the ALJ

---

[2] Lubin's arguments related to Dr. Gucker were not raised until his reply. (Doc. 22.) The Commissioner has not asked that I disregard these additional arguments. Had the Commissioner made such a request, Lubin may have argued that he was simply responding to issues raised in the Commissioner's brief, as allowed under *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164-65 (10th Cir. 1998). I address these new arguments anyway because they do not change the outcome of the case.

describes the record as a whole and provides enough specific detail for rejecting the three moderate limitations advanced by Dr. Gucker. The ALJ should, in the future, be more specific when rejecting portions of a medical opinion.

## II.     Third Party Statements

Information from "other sources" may be used to determine the severity of a medically determinable impairment and how it impacts the claimant's ability to function. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). The ALJ is required to consider all relevant evidence in the record, but the weight assigned to that evidence will vary depending on the particular facts. *Id.* at *4. When considering evidence from non-medical sources who have not seen the claimant in a professional capacity, the ALJ should consider factors including the nature and extent of the relationship, consistency with other evidence of record, and "any other factors that tend to support or refute the evidence." *Id.* at *6. While there is a difference between what the ALJ must consider and what she must explain in the decision, the ALJ should "ensure that the discussion of the evidence in the . . . decision allows a . . . subsequent reviewer to follow the [ALJ's] reasoning." *Id.*

Lubin argues that the ALJ failed to "genuinely consider[]" the third party statements of record. (Doc. 16 at 21.) Dr. Peterson, Green, and Barrack are "other sources" as defined by 20 C.F.R. §§ 404.1513(d) and 416.913(d), and have not seen Lubin in their professional capacities. In her narrative discussion of the evidence, the ALJ discussed each of the three reports. (AR 23.) Each report "reflect[s] certain limitations, [but] also reflects that [Lubin] performs many activities of daily living and has high functioning capabilities. When read in the context of the entire record, the reports do not militate in favor of limits beyond those [described in the decision.]" (*Id.*)

In reviewing the decision, the ALJ's reasoning is clear: the limitations described in the third party statements exceed those present in the medical source opinions, and the ALJ weighed the medical source opinions more heavily. Furthermore, she accounted for many of the limitations described in Dr. Peterson's and Barrack's statements by limiting Lubin to work that does not involve complex instructions. It is clear that the ALJ considered the third party statements. She provided enough detail in the decision to allow the reviewing Court to follow her reason. Therefore, the ALJ did not commit reversible error on this point.

### III.    RFC Assessment

Finally, Lubin argues that the ALJ failed to include a function-by-function assessment in her narrative discussion, in violation of 20 C.F.R. §§ 404.1545 and 416.945, and SSR 96-8p, 1996 WL 374184 (July 2, 1996). Lubin repeats his arguments related to the ALJ's treatment of medical opinions.

The RFC includes exertional and nonexertional limitations expressed in terms of work-related functions. SSR 96-8p, 1996 WL 374184, at *5-6. The RFC assessment must include a narrative discussion that describes how the evidence supports each conclusion, citing specific facts. *Id.* at *7.

As described above, the ALJ sufficiently explained her use of the medical opinions, particularly when she did not adopt a finding. Accordingly, the ALJ included an adequate functional assessment in her narrative discussion and did not commit reversible error.

### CONCLUSION

The ALJ adequately explained her use of the medical opinions and third party statements in this case. While the ALJ could have been clearer or more specific, she did not commit

reversible error. Therefore, I deny Lubin's motion to reverse and remand, and affirm the decision of the Commissioner.

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any pro se
party as they are shown on the Court's docket.